### HAYS *v.* GOODWIN.

#### Opinion delivered December 22, 1924.

FRAUDS, STATUTE OF—PART PERFORMANCE.—It is sufficient part per-
formance to take an oral exchange of land out of the statute
where one party went into possession and caused the land given
in exchange to be conveyed to the other party, and it is imma-
terial that the party going into possession did not retain actual,
continuous or adverse possession.

Appeal from Union Chancery Court, Second Divi-
sion; *George M. LeCroy,* Chancellor; affirmed.

#### STATEMENT OF FACTS.

This action was instituted in the circuit court by
appellants against appellee to recover the possession of
lot 10, in block 3, in the town of Norphlet, in Union
County, Arkansas.

Appellee filed an answer, setting up facts which con-
stituted an equitable defense to the action, and on his
motion, and without objection on the part of appellants,
the case was transferred to the chancery court.

The Methodist Episcopal Church South of Norphlet,
Arkansas, originally owned the lot in question under a
warranty deed from T. M. Stocks. There was a church-
house erected on the property, which was subsequently
torn down. The church was directly in front of the resi-
dence of Francis Goodwin. Some time after the church
was torn down, it was decided to build another one. Clay
Cook, Bill Hays, and Francis Goodwin were the trustees
of the church. Francis Goodwin did not want the church
to be rebuilt in front of his residence, because it cut off
his view in that direction. He made an agreement with
the other trustees to convey the lot in question to him in
exchange for another lot in another part of town. Pur-
suant to this agreement, Francis Goodwin purchased the
other lot, and had the title made direct to the trustees of
the Methodist Church. The trustees then proceeded with
the erection of a new church on it. It was agreed between
them that the church conference would arrange for the
execution of a deed to Francis Goodwin to the lot in

question.  Francis Goodwin took possession of the lot, and used it as a place on which to store his wagons and tools, and also rented it annually to such shows as came to the little town and made arrangements with him to use it for that purpose.

After the death of Francis Goodwin, his son, T. C. Goodwin, took possession of the lot in question, and used it in the same way for about eleven years, until just before this suit was brought.  No one challenged the right of Francis Goodwin to occupy the lot, and it was generally considered to be owned by him.  After his father's death, T. C. Goodwin purchased the interest of the other heirs in said property and received a deed thereto from them. The above facts were testified to by T. C. Goodwin and several other persons.

Some of the witnesses testified that Bill Hays and Clay Cook, the other trustees of the church, told them that they had exchanged the lot in question with Francis Goodwin for another lot which he had purchased and caused to be conveyed directly to the church, and on which the new church was erected.

On the part of appellants it was shown by two of the present trustees of the church, and a member thereof, that the lot in controversy had not been inclosed by a fence, and that they did not know that either Francis Goodwin or T. C. Goodwin was claiming it until just before the present suit was commenced.

The chancellor found the issues in favor of appellees, and it was decreed that the complaint of appellants should be dismissed for want of equity.  The case is here on appeal.

*Geo. R. Haynie,* for appellant.

The rightful owner is deemed to be in possession until he is ousted or disseized.  Possession follows title in the absence of any actual possession adverse to it.  60 Ark. 163; 43 Ark. 469; 73 Ark. 344.

*Mahony, Yocum & Saye* and *J. N. Saye,* for appellee.

Having accepted the benefit of the contract, the church is now estopped to plead the statute of frauds as

a defense. 10 R. C. L. 834, § 138. Equity will never lend its aid to one who invokes it for the purpose of perpetrating a fraud. 52 Ark. 207; Bigelow, Est. 557; 69 Ark. 513; 136 Ark. 237; 128 Ark. 390; 96 U. S. 332; 17 Pick. 213; 2 Wash. Real Prop., *496, § 24. Where one has permitted another to perform acts on the faith of an agreement, he shall not insist that the agreement is barred, and he be entitled to treat those acts as if it had never existed. 52 Ark. 207; 48 Ark. 539. No particular act or series of acts is necessary to demonstrate an intention to claim ownership. 1 R. C. L. 693; 2 C. J. 54; 30 Ark. 640; 147 Ark. 126; 92 Ark. 321. The statute of limitations began to run on the date of the agreement between the trustees and Goodwin. 128 Ark. 390; 115 Ark. 154; 159 Ark. 509.

HART J., (after stating the facts). The evidence clearly shows that Francis Goodwin, in his lifetime exchanged a lot owned by him with the Methodist Church for the lot in controversy. The exchange was made in this way: Goodwin purchased the lot, and had the deed made direct to the Methodist Church; the trustees accepted the deed to the lot, and erected a church on it; possession of the lot in controversy was taken by Francis Goodwin under the agreement, and in this way the exchange was consummated. It is true that no deed or other instrument in writing was given to Francis Goodwin, but the oral contract for the exchange of the lots was taken out of the statute of frauds by the fact that Francis Goodwin entered into possession of the lot in controversy, and caused the lot which he had given in exchange for it to be conveyed to the Methodist Church. This is sufficient part performance of the contract to take the case out of the operation of the statute of frauds. *Carnahan* v. *Terral Bros.*, 137 Ark. 407; *Newton* v. *Mathis*, 140 Ark. 252; *Kilgore Lbr. Co.* v *Halley*, 140 Ark 448; *Beattie* v. *Smith*, 146 Ark. 532; and *Wilkinson* v. *James*, 164 Ark. 475.

It does not make any difference whether either Francis Goodwin or T. C. Goodwin has remained in the actual

continuous and adverse possession of the lot in question so as to obtain the title by adverse possession. The title was obtained by the oral contract for the exchange of the lots, which was consummated by Francis Goodwin's taking possession of the lot in controversy and paying the consideration therefor, which was done by causing a deed to the lot given in exchange for it to be made to the Methodist Church. After the exchange had been consummated by taking possession of the lot and paying the consideration therefor, it did not make any difference whether either Francis Goodwin or T. C. Goodwin remained in the continuous, adverse possession of the lot for the statutory period. The title by the exchange had passed out of the church, and it did not make any difference to it or its trustees what the purchaser did with the lot.

It is next objected that T. C. Goodwin did not have title to the lot, and could not maintain this action. On this point T. C. Goodwin testified that the lot belonged to his father's estate, and that, after his death, he received a deed from the other heirs of his father to the lot. His testimony in this respect was not attempted to be contradicted.

It follows that the decree was correct, and will be affirmed.